UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:17-CR-057 |
| | ) | |
| MARK CURTIS ADAMS | ) | |

**MEMORANDUM AND ORDER**

In May 2018, this Court sentenced the defendant to a below-guidelines term of 120-months' imprisonment for using a means of interstate commerce to induce a minor to engage in illegal sexual activity. [Docs. 45, 46]. The defendant is presently housed at FCI Ashland with a scheduled release date of December 9, 2025. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 9, 2020).

In May 2020, the defendant filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 49]. Because nothing in the record at that time indicated that the defendant had exhausted his administrative remedies as required by § 3582(c)(1)(A), the motion was denied. [Doc. 50].

Now before the Court is the defendant's *pro se* motion for reconsideration [doc. 51], which the Court construes as a renewed motion for compassionate release. Appended to the motion is documentation that the defendant did in fact submit a compassionate release request to the warden of his facility on May 3, 2020, which was denied the following day. The United States has responded in opposition to the defendant's renewed motion. [Doc. 56]. The United States has also filed a victim impact statement which the Court has considered. [Doc. 60]. The defendant has not submitted a reply within the time allowed

by this court's Local Rules.

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's renewed motion for compassionate release will be denied.

## I. BACKGROUND

As noted, the defendant has renewed his motion for immediate compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. In his original motion, the defendant sought release based on obesity, hypertension and other cardiac issues, asthma and other lung ailments, diabetes, "Immune-deficiencies," a liver enzyme disorder, and the current COVID-19 pandemic. The defendant also cited alleged sanitation deficiencies within the Bureau of Prisons ("BOP"), fire safety issues, an April 2020 COVID-19 outbreak on an aircraft carrier, COVID-19 concerns at Rikers Island prison, an ACLU lawsuit, a COVID-19 outbreak at an Ohio state prison, and his purported good conduct while incarcerated.

## II. DISCUSSION

Section 3582(c)(1)(A)(i) allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

2

> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Beyond this change, the statute still applies the same requirements to a defendant's motion for compassionate release as previously applied to motions by the BOP Director. *See, e.g.*, *United States v. Beck*, 425 F. Supp. 3d 573, 578-79 (M.D.N.C. 2019).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. *See United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019). While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *Id*. at *2 (citations omitted). Moreover, the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider. *See id*. (concluding likewise).

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A)(i), the compassionate release analysis requires several findings. First, the

Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

### A. Exhaustion

In this case, the record demonstrates that the defendant has previously asked the BOP to file a compassionate relief request on his behalf. Thirty days have passed since that request was received by the warden of his facility. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

#### 1. Extraordinary and Compelling Reasons

The Application Notes to guideline 1B1.13 provide, in material part:

1. Extraordinary and Compelling Reasons.— ... [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

4

(ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A). The instant motion appears to be based on Application Note 1(A)(ii)(I), which requires a serious medical condition that substantially diminishes the ability to provide self-care within the prison environment and from which the movant is not expected to recover.

As with his original motion, the defendant's renewal is unaccompanied by any medical documentation to support his position. The United States' response, however, includes 14 pages of BOP medical records. Those documents confirm that the defendant does indeed suffer from diabetes and hypertension, each of which was described as "uncontrolled" by a BOP physician in June 2019. The physician noted that lifestyle changes and a low sodium diet were "need[ed]." At that time, an "[a]cute upper respiratory infection" was also noted.

By September 2019, the defendant's blood pressure was described as "controlled." Neither the records of that appointment nor follow-up visits in November 2019 and March 2020 deem his diabetes or hypertension "uncontrolled." The Court cannot discern documentation of any of the defendant's other purported medical conditions in these records, nor has the defendant directed the Court's attention to any supporting evidence.

5

Having considered the medical record before it, the Court does not find that the defendant's medical conditions *substantially* diminish his ability to provide self-care within the prison environment. His diabetes and hypertension have not been termed "uncontrolled" in more than a year. The medical records confirm that the defendant works and "does lift heavy objects." Accordingly, the defendant's medical conditions do not at this time appear to be of the severity contemplated by guideline 1B1.13's policy statement.

Further, no inmates at the defendant's prison have tested positive for COVID-19, and there has been only one positive test among the prison staff. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 9, 2020). These minimal numbers suggest that that the preventative measures being taken by the Bureau of Prisons, as described by the United States in its response brief, are having an effect. *See, e.g., United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020) (medically managed serious health conditions, paired with a generalized fear of COVID-19, fell short of "extraordinary and compelling reasons" justifying compassionate release).

### 2. Danger to Any Other Person or to the Community

In the alternative, the Court also finds that the defendant has not shown that he would not be a danger if released. Guideline 1B1.13 provides that compassionate release is only appropriate where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2). Section 3142(g) outlines the factors the Court must consider in determining whether a defendant should be detained pending trial. Specifically, § 3142(g) provides:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> > (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > (2) the weight of the evidence against the person;
> >
> > (3) the history and characteristics of the person, including—
> >
> > > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > >
> > > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> >
> > (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Court has considered the above-listed factors and has refamiliarized itself with the defendant's Presentence Investigation Report ("PSR"). The nature and circumstances of the defendant's disturbing offense of conviction and the weight of the evidence against him are well-described in the PSR and will not be restated herein. [Doc. 34, ¶¶ 8-13, 17-25]. That conduct occurred *after* the defendant was diagnosed with asthma and hypertension. [*Id.*, ¶ 56]. These facts leave the Court unable to find that the defendant would not pose a danger to the safety of another person or the community if released. For

7

Case 2:17-cr-00057-RLJ-MCLC   Document 61   Filed 07/15/20   Page 7 of 8   PageID #: 329

this additional reason, the motion must be denied.

### 3. Section 3553(a) Factors

Because the defendant has not demonstrated extraordinary and compelling reasons justifying his release, and because the Court is not satisfied that he would not pose a danger if released, the Court finds it unnecessary to engage in a lengthy discussion of the 18 U.S.C. § 3553(a) factors in this case. Suffice it to say that the more than half of the defendant's sentence remains unserved. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("Despite Kincaid's assertion that the amount of time served is not a proper basis for denying compassionate release, the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). As in *Kincaid*, a substantial sentence reduction in this case would not reflect the extreme seriousness of the offense of conviction, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes. *See* 18 U.S.C. § 3553(a)(2).

## III. CONCLUSION

For the reasons stated herein, Defendant's renewed motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [doc. 51] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge